## JAMES L. HAVEN & Co. v. GOODEL, HAVEN & Co.

Members of a partnership are not liable upon negotiable paper made and indorsed, without their knowledge, in the firm name, after public dissolution, even though the proceeds have been applied to the payment of partnership debts.

SPECIAL TERM.—Action to recover money advanced to and expended by one partner in payment of partnership debts. The facts appear sufficiently in the decision.

*Taft, Key & Perry*, for plaintiffs.

*Miner, Clark & Oliver*, and *Fox & French*, for defendants.

STORER, J. This action is brought to recover back money alleged to have been paid by plaintiffs for defendants.

It appeared, on trial, the defendants were partners in commercial business, prior to January 1, 1853, when the firm was dissolved by the withdrawal of Goodel, and a formal notice of the fact published in one of the city newspapers. By the terms of dissolution, Augustus Haven, one of the partners,

was authorized to settle up all the business of the firm, when the dissolution took place. Haven and Dean united themselves with Clark, under the name of Haven, Dean & Clark, occupying the place of business of the former firm. Goodel, meanwhile, had became a partner of Cowgill, on the same street. On the 7th of February, 1853, the plaintiffs, it is alleged, loaned to Haven their note for $1236.20, payable in sixty days, to the order of the old firm. This note Haven indorsed, in the firm name, and procured it to be discounted. On the 11th of April, 1853, when the note became due, another note was loaned, in the same name, for $1240.51, payable to the order of the same parties. This last note was also indorsed by Haven, in the name of the former firm, and discounted at the office of Ellis & Morton. Both of these notes were taken, indorsed, and discounted, without the knowledge or consent of Goodel, who was not advised of the existence of either, until a short time before the last became due—Haven, in the meanwhile, having left the State. Assuming that the proceeds of these notes were received by Haven, the first having been paid, by Haven, before his departure, and that he alone had the benefit of the discounts, it is then proved by one of the plaintiffs, who is a brother of one of the defendants, that the plaintiffs paid the last note, and they ask that the defendants shall be adjudged to refund to them the amount they have advanced. It is further proved, by Augustus Haven, that he applied the proceeds, of the first note, to the payment of the debts of the firm, which he was authorized to settle.

On the other hand, it is claimed by the defendant, Goodel, that the notes were made, by the plaintiffs, payable to a firm not then in existence; that they were indorsed by one of the firm without any authority from the other members, and that the act of Haven was unknown to Goodel at the time, and he has never sanctioned it since he discovered it. It is fully in proof, that though one of the plaintiffs knew, at the time he made the notes, that the firm of Goodel, Haven & Dean had been dissolved, it is also proved that before the last note

became due, Haven, one of the plaintiffs, told a witness, that the note was loaned to his brother Augustus, and that he knew that he could not recover the amount from Goodel, as one of the old firm, and relied solely on his brother to secure him against loss.

The plaintiffs rest their right to recover, principally upon the fact stated by Augustus Haven, that the money raised from the notes, was applied to the liquidation of the partnership debts, and very strenuously urge that such an appropriation creates a new liability on the part of all the former members of the firm ; that as they are responsible for the original debt, no additional burden is imposed by the subsequent contract to raise the means to pay it, and it is, therefore, equitable and just to compel all the partners to unite in discharging the obligation. This argument is sustained by the supreme court of Pennsylvania, in 5 Wharton, 530, *Estate of Davis* v. *Desauque;* 4 Barr, 242, *Robinson et al* v. *Taylor;* 3 Watts & Serg't 345, *Houser* v. *Irvine.*

This construction of the law is confined, so far as we can discover, to the courts of that State. It is not the law as laid down in the text-books ; but, on the contrary, we believe it is directly opposed to the whole current of decisions on the subject. 1 Henry Blackstone, 156, *Kilgour* v. *Finlyson;* Collyer on Partnership, §540; Story on Partnership, §322 ; 1 Hill, N. Y., 572, *National Bank* v. *Norton;* 2 Metcalf, Mass., 309, *Bowman* v. *Blodgett.*

And the power to settle and adjust the affairs of the partnership, does not authorize the use of the partnership name, for that purpose. 19 Maine, 355, *Perrin* v. *Keene;* 18 Pick. 505, *Parker* v. *Macomber;* 13 Vermont, 522, *Woodworth* v. *Downer;* 3 Esp., 108, *Abel* v. *Sutton;* 1 Carter, Ind., 188, *Hamilton* v. *Seaman;* 33 Maine, 424, *Waite* v. *Foster;* 21 Conn., 388, *Brooks* v. *Holland;* 3 Richards's Eq. Rep., 119 ; 4 McLean, 383, *Lockwood* v. *Comstock & Bissell.*

These cases are but the repetition of the rule that has been long and very clearly established, by the English, and

the great majority of the American courts; we should say all, with the exception of those of Pennsylvania. If, as the law is broadly laid down, the duties and the rights of the co-partnership cease, so far as the one requires the personal attention of the individual members to the common property; and the other, so far as they could have bound the co-partnership, whenever the contract of co-partnership is dissolved; if, at that period, neither partner can use the name of the other, by indorsement, or any other form of contract, we can not understand why it is claimed that one partner can borrow money in the name of the original firm, and its subsequent application confirm the act that could not be supported if such application had not been made. The assent of the other partners is not thus given to the conduct of the individual, who pledges the name of the firm, and no authority can be inferred from the act itself.

In any aspect we are permitted to view the question, we feel it to be our duty to adhere to the law, as we find it; not in the adjudications of a single State, but in the broad principle already alluded to, and that is so universally regarded as an axiom in the law of partnership. A dissolution destroys the unity of the original association; the partners then become individuals only, with full ability to assume new liabilities that may bear upon each other, but will not affect the former relation.

In our judgment, we must find the merits of the case, upon the questions thus mooted, in favor of the defendants.

Another point was raised, that there were acts of recognition, on the part of Goodel, as to the conduct of Augustus Haven, after the dissolution of the concern. They depended upon isolated instances, when Haven used the firm name, after dissolution, and Goodel was privy to it; but these instances are explicable by the circumstances that induced the permission, or sanctioned the act. They do not apply to the responsibility assumed by the individual partners in the present case,—and we can not infer from either, or all the transactions proved, any intention to confer a

general power upon Haven, to use the partnership name, for any purpose whatever, other than the ordinary liquidation of the debts, and the collection of the credits.

We must render judgment for the defendants.